Filed 5/26/15  P. v. Charlesworth CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN CHARLESWORTH,<br><br>    Defendant and Appellant. | D065144<br><br><br><br>(Super. Ct. No. SCE327383)<br>(Super. Ct. No. SCE316516) |

APPEAL from a judgment and orders of the Superior Court of San Diego County,

Daniel B. Goldstein, Judge.  Affirmed as modified, with directions.

Cannon & Harris and Donna L. Harris, under appointment by the Court of Appeal,

for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott Taylor,

and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

In this domestic violence case, defendant Martin Charlesworth challenges the trial

court's orders revoking his probation and sentencing him to an aggregate term of five

years in state prison.  Charlesworth contends the court's finding that he violated the terms of his probation must be reversed because (1) the evidence presented at the probation revocation hearing was "insufficient to establish that [he] willfully violated probation by entering the exclusion zones [near Grossmont College] because uncontroverted evidence established that [he] was not given notice to stay away from the locations," and (2) the evidence was also "insufficient to support the [court's] finding that [he] came within 100 yards of [Carolyn] on October 1, 2013."  Charlesworth also contends the court erred by ordering him to pay restitution, probation revocation, and parole revocation fines each in the amount of $280 rather than $240.  The Attorney General acknowledges this court should order the trial court to correct both the November 5, 2013 minute order and the abstract of judgment to reflect that the proper amount of each fine is $240.  We affirm the court's order revoking Charlesworth's probation and the sentence it imposed, but we remand the matter to the superior court with directions to correct the minute order and the abstract of judgment to reflect that the proper amount of each of the three fines is $240.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Background*

In March 2012 Charlesworth pleaded guilty in San Diego County Superior Court case No. SCE316516 to one count of inflicting corporal injury resulting in a traumatic condition upon his then-wife, Carolyn Charlesworth (Carolyn)[1] (Pen. Code, § 273.5,

---

[1]     As Carolyn Charlesworth shares Charlesworth's last name, we shall refer to her by her first name.  At the preliminary hearing in case No. SCE316516, Carolyn testified that Charlesworth hit her with a wooden hiking stick.

subd. (a); all further undesignated statutory references will be to the Penal Code).  The trial court continued the sentencing in that case for a year and released Charlesworth on his own recognizance under specified conditions, including the conditions that he not commit any further acts of domestic violence or violate any laws and that he obey all family court orders.  Several months earlier, in December 2011, the court issued a protective order in that case prohibiting Charlesworth from contacting Carolyn.

In early February 2013 (all further dates are to calendar year 2013) the San Diego County District Attorney filed a domestic violence felony complaint charging Charlesworth in case No. SCE327383 with (1) stalking Carolyn while a restraining order was in effect prohibiting such conduct (count 1:  § 646.9, subd. (b)); (2) threatening to commit a crime against her (count 2:  § 422); (3) harassing her by telephone (count 3:  § 653m, subd. (a)); and (4) violating a protective order while released from custody in a pending criminal proceeding involving domestic violence (count 4:  § 166, subd. (c)(1)).  The complaint also alleged in counts 1 and 2 that Charlesworth was released on his own recognizance when he committed those felony offenses (§ 12022.1, subd. (b)).  Charlesworth pleaded guilty to the stalking charge, and the district attorney dismissed the balance of the charges and allegations.

In mid-April, at a combined probation and sentencing hearing involving both cases (Nos. SCE327383 & SCE316516), the court suspended imposition of sentence in each case, granted Charlesworth formal probation for a period of four years, and ordered him to concurrently serve 365 days in local custody in each case with credit for time already served.  The court also issued a domestic violence protective order ordering Charlesworth

3

as a condition of his probation to (among other things) have "no personal, electronic, telephonic, or written contact" with Carolyn, and to "not come within 100 yards" of her.

On July 31 Charlesworth was arrested for contacting Carolyn in violation of the terms of his probation, and a notice issued in each of the two cases requiring him to show cause why his probation should not be revoked.

At the August 14 order to show cause hearing, Charlesworth admitted the violations and the court revoked his probation but reinstated it for a period of four years under the same terms and conditions, except that in each of the two cases the court ordered Charlesworth to wear a GPS device to continually monitor his whereabouts via satellite. At that hearing the court admonished Charlesworth that "[n]o contact [with Carolyn] means no contact." The court issued another protective order enjoining Charlesworth from contacting Carolyn or coming within 100 yards of her. Charlesworth signed a form stating he understood the probation department's "no contact" definition, which included "written letters" to Carolyn.

On October 2, the day after the incident (discussed, *post*) that resulted in the revocation of his probation and imposition of the five-year prison sentence at issue in this appeal, Charlesworth was arrested again for contacting Carolyn and a notice issued requiring him to show cause why his probation should not be revoked.

B. *Probation Revocation Hearing*

The probation revocation evidentiary hearing was held on October 16.

a. *The People's case*

Carolyn testified that she and Charlesworth were married for 12 and a half years, and they divorced in late April. Earlier in the year she and her children moved in with her parents at their home on Del Rio Road in Spring Valley. Carolyn's parents had lived at that address for over 30 years and Charlesworth had been to the home numerous times during the time he and Carolyn were married.

Carolyn began attending Grossmont College on August 19, shortly after the court reinstated Charlesworth's probation on August 14 after the latest of his violations of the terms of his probation. She testified that prior to October 1 she began receiving "weird" text messages from an unknown person in which the person stated where she lived, how many children she had, and places she had visited. She testified that "[t]hat's basically the type of conversations that [Charlesworth] used to have with [her] when [they] were married." She added that "the conversations [were] very similar to the conversations that [she and Charlesworth] used to have when [Charlesworth] was having one of his episodes during [their] marriage."

Carolyn testified that on October 1 she arrived on the Grossmont College campus at around 7:45 a.m., parked her car in the same place she had parked it all semester, and then went to class. When she returned back to her car shortly before 10:00 a.m., she found a yellow piece of paper on her front windshield. A telephone number she did not recognize was written on one side, and "Aha" was written on the other side. Carolyn testified that the writing was "familiar" and "look[ed] like [Charlesworth's] writing."

5

Carolyn also testified that the note was written on "the top part of an envelope from a parking ticket." She indicated she believed Charlesworth had written the note and put in on her windshield. She testified that "[Charlesworth] had been mailed a parking ticket from the city, and [she had] received mail that said parking enforcement. So [she] knew at some point recently [he] had gotten a parking ticket." Carolyn testified that the note "bothered [her] a lot," so she called the probation department.

The People presented evidence that Charlesworth's GPS monitoring system, an ankle bracelet attached to him that transmitted his location through satellites, showed he was at Grossmont College between 9:42 a.m. and 9:48 a.m. on October 1. It also showed he was near Carolyn's parents' house on Del Rio Road at 11:39 a.m. that morning. Specifically, the GPS monitoring system showed Charlesworth was at 10823 Del Rio Road at that time. Carolyn testified her parents' house where she lived was located at 10826 Del Rio Road. Charlesworth was arrested the following day.

b. *Defense Case*

Testifying in his own defense, Charlesworth admitted he was on Del Rio Road on October 1 at around 9:30 a.m. to 9:34 a.m. and again at about 11:39 a.m., but he was only there because he was traveling to his storage unit located on Austin Drive, which turns into Del Rio Road. He explained that he must travel down Del Rio Road to reach his storage unit, and he was on Del Rio Road twice that morning because he forgot both his access key and his password to the storage unit the first time, so he had to come back.

Charlesworth admitted on cross-examination that he knew where Carolyn's parents lived on Del Rio Road because he had been there more than several dozen times during

6

the time he and Carolyn were married, but he indicated he did not know Carolyn was living there. He testified that his storage unit was "a few hundred feet down from [Carolyn's parents] house" and he has to go by their house to get to the storage unit. He also testified that he rented the storage unit on August 31,[2] two weeks after he was released from custody and granted probation, and that Carolyn's parents' address was listed on the rental application as his own address.

Regarding his presence at Grossmont College from 9:42 a.m. to 9:48 a.m. on October 1, Charlesworth testified that he had been heading north on the SR 125 freeway when he received a text notifying him that he needed to be at the Veteran's Village of San Diego before noon,. He took the Grossmont College Drive off-ramp in order to make a U-turn and drive southbound on the 125. He testified he was on the overpass of Grossmont College Drive when he got off the freeway, but he did not know it was the exit for Grossmont College. He explained the duration of his stay in that area by testifying that the road was "congested" with traffic. He also testified he did not know at that time that Carolyn was a student at Grossmont College.

Charlesworth testified he did not receive a parking ticket during the six-month period before October 1. He also testified that no one had informed him he was not to go near Grossmont College or Carolyn's parents' house.

---

[2]     Two weeks earlier, at the August 14 order to show cause hearing (discussed, *ante*), Charlesworth admitted he had violated the conditions of his probation, and the court revoked his probation but reinstated it for a period of four years under the same terms and conditions, except that the court ordered Charlesworth to wear the GPS device.

7

Charlesworth's probation officer, when asked by defense counsel on cross-examination to compare the note Carolyn found on her windshield to the document containing the probation department's "no contact" definition on which Charlesworth had signed and printed his name on August 12, the probation officer stated, "From a quick look, they do not look like they could be from the same person." The probation officer stated he was not a handwriting expert. He acknowledged he did not inform Charlesworth that he was not to enter the campus of Grossmont College or the area near Carolyn's parents' house, and that those places were not specifically listed as off limits in a court order. The probation officer had added them at Carolyn's request sometime around August 14 as GPS monitor "exclusion zones," entry of which triggers a probation violation alert.

c. *Findings and decision*

After considering the evidence, the court found that Charlesworth violated the terms of his probation and revoked his probation in both cases.

C. *Sentencing*

On November 5, 2013, the court sentenced Charlesworth to an aggregate five-year state prison term consisting of the upper term of four years for the stalking conviction (§ 646.9, subd. (b)) in case No. SCE327383 plus a consecutive one-year term (one-third the middle term) for the corporal injury conviction (§ 273.5, subd. (a)) in case No. SCE316516. Charlesworth's timely appeal followed.

DISCUSSION

Charlesworth first contends the court's finding that he violated the terms of his probation must be reversed because (1) the evidence presented at the probation revocation hearing was "insufficient to establish that [he] willfully violated probation by entering the exclusion zones [near Grossmont College] because uncontroverted evidence established that [he] was not given any notice to stay away from the locations," and (2) the evidence was also "insufficient to support the [court's] finding that [he] came within 100 yards of [Carolyn] on October 1, 2013."  This contention is unavailing.

A.  *Background*

After Charlesworth was arrested on October 2, he was ordered to show cause why his probation should not be revoked on the ground he violated the following conditions of his probation:

> "Condition 10c:  Submit to service and comply with any order of the Superior Court, including restraining orders[;]
>
> "Condition 10i:  Do not knowingly contact [Carolyn] except per family Court orders regarding visitation and/or custody of children[; and]
>
> "Condition 10j:  Do not knowingly contact, annoy, or molest, either directly or indirectly [Carolyn]."

The August 14 domestic violence criminal protective order in effect at the time provided in paragraph 10 that Charlesworth "must have *no* personal, electronic, telephonic, or *written contact with* [*Carolyn*]."  (Italics added.)  It also provided in paragraph 17 that he was to stay away from Carolyn's "vehicle." (CT 45 [¶ 17])!

9

At the close of the October 16 evidentiary hearing on the order to show cause, the court stated:

> "If you look at the probation order in both cases, one says follow all superior court orders; but also, on condition 10i, do not knowingly contact the victim . . . . It would be a violation of probation . . . if it was violated.
>
> "Additionally, because it says you have to follow all superior court orders, if you go to the actual [criminal protective order], . . . it says a couple things:  must have no personal, electronic, telephonic or written contact; . . . must not come within 100 yards of protected persons.  Further, condition 17 says [Charlesworth must stay away from Carolyn's] home, employment and *vehicle*."  (Italics added.)

The court found that Charlesworth violated the terms of his probation.  In support of this finding, the court stated that "the victim [( Carolyn)] recognized [Charlesworth's] writing.  She lived with him for 12 and a half years.  That is powerful testimony."  The court explained that while the word "'aha' may not mean anything to us, . . . it meant something to [Carolyn]."

The court also stated:

> "[A]s you look at the GPS coordinates, which [Charlesworth] confirms in his testimony, I mean, we are going on a little trip with [him] that starts near what could be a storage shed but it's also near [Carolyn's] home.  It doesn't matter.  I don't need to take evidence as to whether or not [Charlesworth] knew she was there and that's where she lived.  It's not relevant.  The fact is, the order says you've got to stay 100 yards away from the victim.  He was darn close to it while he was near her home.  Coincidentally, on October 1 at 9:30 in the morning, he is within yards of her home.  He then ends up within yards of her school."

Finding that the GPS evidence was "circumstantial evidence that [Charlesworth was] in the area and darn close to [Carolyn's] car," and reiterating that Carolyn

10

"recognize[d] his writing," the court stated that "it's a pretty easy call."  Finding also that

Charlesworth's testimony was not "very credible," the court stated, "I am going to find

[Charlesworth] in violation of probation in both cases."

B.  *Applicable Legal Principles*

"The fundamental role and responsibility of the hearing judge in a revocation

proceeding is not to determine whether the probationer is guilty or innocent of a crime,

but whether a violation of the terms of probation has occurred and, if so, whether it would

be appropriate to allow the probationer to continue to retain his conditional liberty."

(*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 348.)

"A court may revoke probation 'if the interests of justice so require and the court,

in its judgment, has reason to believe from the report of the probation officer or otherwise

that the person has violated any of the conditions of his or her probation . . . .'"  (*People v.*

*Galvan* (2007) 155 Cal.App.4th 978, 981 (*Galvan*), quoting § 1203.2, subd. (a).)

"[T]he facts supporting revocation of probation may be proven by a preponderance

of the evidence."  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 439 (*Rodriguez*).)  The

term "preponderance of the evidence" means evidence that has more convincing force

than the evidence opposed to it.  (*People v. Mabini* (2001) 92 Cal.App.4th 654, 663.)

"However, the evidence must support a conclusion the probationer's conduct constituted a

willful violation of the terms and conditions of probation."  (*Galvan*, *supra*, 155

Cal.App.4th at p. 982.)

11

1. *Standard of review*

When assessing a challenge to the sufficiency of the evidence supporting a probation revocation, we apply the substantial evidence test. (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848.) Under that standard of review, "our review is limited to the determination of whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision." (*Ibid.*, fn. omitted.) "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Thus, "[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment." (*Maury*, *supra*, 30 Cal.4th at p. 403.)

C. *Analysis*

Viewing the evidence in the light most favorable to the judgment as we must (*People v. Johnson* (1980) 26 Cal.3d 557, 578), and mindful that the People's burden at the probation revocation hearing was to prove by only a preponderance of the evidence that Charlesworth violated the conditions of his probation (*Rodriguez*, *supra*, 51 Cal.3d at p. 439), we conclude the prosecution met its burden of presenting substantial evidence

12

from which a reasonable trier of fact could find by a preponderance of the evidence that Charlesworth violated the conditions of his probation.

Charlesworth was on probation for having committed domestic violence against Carolyn and having stalked her and then repeatedly contacting her in person and in writing despite court orders prohibiting him from doing so.

During the October 16 evidentiary hearing at issue here, Carolyn testified that prior to the October 1 incident at Grossmont College involving the note she found on the windshield of her car, she began receiving weird text messages from an unknown person in which the person who wrote the messages stated where she lived, how many children she had, and places she had visited. Carolyn testified that the person's conversations in the messages were "very similar to the conversations" she and Charlesworth used to have during their marriage. This testimony is substantial circumstantial evidence that Charlesworth was the person who wrote those text messages.

Carolyn also testified that she parked her car at Grossmont College at 7:45 a.m. on October 1 and, when she returned to her car just before 10:00 a.m. later that morning, she found on the front windshield of her car a note written on a portion of a parking ticket envelope. Written on the envelope was the word "Aha."[3] Carolyn testified that the note "bothered [her] a lot" and she called the probation department. She recognized the writing as Charlesworth's. Specifically, she testified that the writing was "familiar" and "look[ed] like [Charlesworth's] writing." She also testified that Charlesworth recently

---

3      Merriam-Webster's Collegiate Dictionary (11th ed. 2006) at page 26 states that "aha" is an interjection that is "used to express surprise, triumph, or derision."

had received a parking ticket. The prosecution's GPS evidence showed that Charlesworth was at Grossmont College between 9:42 a.m. and 9:48 a.m. on October 1. During his testimony, Charlesworth admitted he was on Grossmont College Drive shortly after 9:42 a.m. that day.

We conclude a reasonable trier of fact could find from the foregoing substantial evidence that the prosecution met its burden of proving by a preponderance of the evidence that Charlesworth willfully violated conditions 10c, 10i, and 10j of his probation, as well as paragraphs 10 and 17 of the August 14 domestic violence criminal protective order, by writing the note in question and putting it on the windshield of her car. Charlesworth's reliance on his own testimony that he was not on the Grossmont College campus on October 1,, that he did not know at that time that Carolyn was a student at Grossmont College, and that he did not receive a parking ticket during the six-month period before October 1, is unavailing. The court found that Charlesworth's testimony was not credible, and we will not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Ochoa*, *supra*, 6 Cal.4th at p. 1206; *People v. Jones*, *supra*, 51 Cal.3d at p. 314.) This applies as well to Charlesworth's reliance of the testimony of his probation officer, who, in any event, acknowledged he was not a handwriting expert.

## II. *FINES*

Charlesworth also contends the court erred by ordering him to pay restitution, probation revocation, and parole revocation fines each in the amount of $280 rather than $240. The Attorney General acknowledges this court should order the court to correct

14

both the November 5, 2013 minute order and the abstract of judgment to reflect that the proper amount of each fine is $240. Accordingly, the amount of each of those fines is ordered reduced from $280 to $240, and we remand the matter to the superior court with directions that it correct the November 5, 2013 minute order and the abstract of judgment to reflect that the proper amount of each fine is $240, and that it forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

DISPOSITION

The court's order revoking Charlesworth's probation and the sentence are affirmed. The amount of each of the three subject fines (the restitution, probation revocation, and parole revocation fines) is modified and reduced to $240. The matter is remanded to the superior court with directions that it correct the November 5, 2013 minute order and the abstract of judgment to reflect that the proper amount of each fine is $240, and that it forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

15